DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE DENTAL LAW FIRM, P.A.** d/b/a **SHOCHET LAW GROUP,**
Appellant,

v.

**THE PEOPLE'S CHOICE PUBLIC ADJUSTERS, LLC,** et al.,
Appellees.

No. 4D21-1295

[August 17, 2022]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gregory M. Keyser, Judge; L.T. Case No. 502020CA004056.

Randall Shochet of Shochet Law Group, Trenton, for appellant.

Alan L. Raines and Elizabeth Jimenez of Raines Legal, Boca Raton, for appellee The People's Choice Public Adjusters, LLC.

GERBER, J.

After a public adjuster sued a law firm in a third-party action, the law firm filed a section 57.105, Florida Statutes (2020), sanctions motion against the public adjuster and the public adjuster's counsel. The law firm's section 57.105 motion argued the public adjuster's third-party action, when initially filed, was not supported by the material facts necessary to establish the third-party action's claims or the application of then-existing law, and did not present a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law. The circuit court entered an order denying the law firm's section 57.105 motion.

From the law firm's appeal of that order, we reverse. We conclude the public adjuster's third-party action, when initially filed, was not supported by the material facts necessary to establish the third-party action's claims or the application of then-existing law, and did not present a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law. Thus, the circuit court erred in denying the law firm's section 57.105 motion.

## ***Procedural History***

### A. *The Insureds' Action Against Their Insurer*

The multi-faceted procedural history began when two insureds hired the public adjuster to report a property loss claim to their insurer.

Ninety-three days after the public adjuster had reported the claim, the insurer contacted the public adjuster about inspecting the insureds' property. However, the public adjuster believed the insurer's request was untimely pursuant to section 627.70131(5)(a), Florida Statutes (2017):

> Within 90 days after an insurer receives notice of an initial, reopened, or supplemental property insurance claim from a policyholder, *the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment*. …

§ 627.70131(5)(a), Fla. Stat. (2017) (emphases added). Based on the public adjuster's belief that the insurer's request to inspect the property was untimely, the public adjuster did not permit the insurer to inspect the insureds' property. Without being permitted an inspection, the insurer denied the insureds' claim.

The insureds, now represented by the law firm, filed a breach of contract action against the insurer. In response, the insurer filed a summary judgment motion arguing the insureds had not permitted a property inspection as the policy required. The law firm did not file a response or affidavit on the insureds' behalf arguing that the insurer's request to inspect the property had been untimely under section 627.70131(5)(a). Without any opposition having been filed by the insureds, the circuit court entered an order granting the insurer's summary judgment motion.

### B. *The Insureds' Action Against the Public Adjuster*

The insureds, still represented by the law firm, then filed a two-count action against the public adjuster.

The insureds' Count 1 against the public adjuster sought damages for violation of section 626.854(14)(b), Florida Statutes (2020) ("A public

adjuster may not restrict or prevent an insurer … or other person acting on behalf of the insurer from having reasonable access at reasonable times to … the insured property that is the subject of a claim.").

The insureds' Count 2 against the public adjuster sought damages for breach of contract, alleging the public adjuster had "fail[ed] to act in the [insureds'] best interests … [and] fail[ed] to properly appraise, advise and/or assist in the adjustment of the loss."

## C. *The Public Adjuster's Third-Party Action Against the Law Firm*

In response to the insureds' suit, the public adjuster filed a three-count third-party action against the law firm representing the insureds.

The public adjuster's Count 1 against the law firm was for breach of intended beneficiary contract. Count 1 alleged, in pertinent part:

> [The law firm] and [the insureds] intended that [their] [legal services] [c]ontract benefit [the public adjuster] by virtue of … [the public adjuster] being entitled to [20%] … of any money [which the insureds] received pursuant to the [public adjuster's agreement with the insureds,] [which the law firm] was aware of prior to the execution of the [legal services contract].

> The [legal services contract] was breached by [the law firm] failing to file a [r]esponse … to the [insurer's] [m]otion for [s]ummary [j]udgment or [a]ffidavit [o]pposing the [insurer's motion] and failing to address [the insurer's] failure to inspect the [p]roperty or pay out the insurance claim before [section 627.70131(5)(a)'s] [ninety-]day deadline ….

(paragraph numbering deleted).

The public adjuster's Count 2 against the law firm was for malpractice. Count 2 sought to recover the public adjuster's damages "as a result of [the law firm's] breach of its professional duty to [the insureds]," including the failure to respond to the insurer's summary judgment motion or address the insurer's failure to comply with section 627.70131(5)(a)'s ninety-day deadline to inspect the property or pay the claim.

3

The public adjuster's Count 3 against the law firm was for common law indemnification. Count 3 similarly alleged the law firm had failed to file a response to the insurer's summary judgment motion or address the insurer's failure to comply with 627.70131(5)(a)'s ninety-day deadline to inspect the property or pay the claim, and the public adjuster was "without any fault as to the [law firm's] actions," for which it "has suffered damages."

D. *The Law Firm's Motion to Strike the Public Adjuster's Third-Party Action as a Sham*

The law firm filed a motion to strike the public adjuster's third-party action as a sham.

The law firm's motion argued, as to all of the public adjuster's third-party counts, the public adjuster had been solely responsible for not allowing the insurer to inspect the insureds' property, based on the public adjuster's errant belief that the expiration of section 627.70131(5)(a)'s ninety-day deadline permitted the public adjuster to refuse the inspection.

As to the public adjuster's Count 1 for breach of intended beneficiary contract, the law firm argued no evidence showed the insureds and the law firm intended their legal services agreement to directly benefit the public adjuster. Instead, according to the law firm:

> At most, the [legal services agreement] only establishe[d] the Insured[s'] responsibility to retain 80% of the settlement and to pay a 20% commission to [the public adjuster]. This is insufficient to assert [an intended] beneficiary breach of contract claim.

As to the public adjuster's Count 2 for malpractice, the law firm acknowledged that an intended beneficiary of a legal services agreement may have standing to pursue a malpractice claim. However, according to the law firm, no evidence showed the insureds and the law firm intended their agreement to directly benefit the public adjuster.

As to the public adjuster's Count 3 for common law indemnification, the law firm argued the public adjuster was not without fault and did not have a special relationship with the law firm which, if present, would have made the public adjuster vicariously, constructively, derivatively, or technically liable to the insureds for the law firm's alleged malpractice.

4

The public adjuster filed a response to the law firm's motion to strike. To show the public adjuster was an intended beneficiary of the legal services agreement, the response pointed to a different circuit court's discovery order—entered in a separate action between the public adjuster and the law firm—which had provided: "[The law firm] engaged in *a tri-partite relationship* with [the insureds as] mutual clients of [the law firm] and [the public adjuster], which was accompanied or preceded by [the public adjuster's agreement] with the [insureds]." (emphases added). The public adjuster also argued the law firm's failure to respond to the insurer's summary judgment motion was what ultimately resulted in the insureds' defeat on that motion and, in turn, the insureds' failure to prevail against the insurer.

A predecessor circuit court held a hearing on the law firm's motion to strike. During the hearing, the law firm introduced its legal services agreement with the insureds. The public adjuster claimed it was seeing the agreement for the first time. After the hearing, the predecessor circuit court took the law firm's motion to strike under advisement.

A week later, the public adjuster filed a voluntary dismissal of its Count 3 against the law firm for common law indemnification. However, the public adjuster filed a post-hearing memorandum in support of its Count 1 breach of intended beneficiary contract and Count 2 for malpractice against the law firm. The memorandum argued the following provisions of the law firm's legal services agreement with the insureds evidenced the agreement's "intent and meaning":

> 1. FEES FOR LEGAL SERVICES – CONTINGENCY FEE BASIS: [The insureds] shall not be obligated to [the law firm] unless there is a recovery from the [insurer]. [The insureds] hereby authorize [the law firm] to file suit against … [the insurer] or other responsible party should they deny, reject, or under-pay [the insureds'] claim.
>
> ….
>
> 5. [INSUREDS] WHO HAVE RETAINED A PUBLIC ADJUSTER: If [the insureds] have retained a public adjuster … in connection with the same insurance claim … [the insureds] will be solely responsible to pay the public adjuster from the [the insureds'] net proceeds in accordance with [the insureds'] agreement with the public adjuster.

The predecessor circuit court entered an order granting the law firm's motion to strike the public adjuster's third-party action. In the order, the predecessor circuit court found that because the public adjuster had voluntarily dismissed its common law indemnification claim, and had never pled a claim for contribution or subrogation, the public adjuster lacked standing to assert a third-party action. The predecessor circuit court further found the public adjuster was not an intended beneficiary of the legal services agreement. "To the contrary," the predecessor circuit court found, "the [legal services] agreement makes clear that [its] intention is to … leav[e] [the public adjuster's] payment to the [insureds]. The legal services … are exclusively intended for the [insureds'] benefit."

### E. *The Law Firm's Section 57.105 Motion Against the Public Adjuster*

On the same date when the law firm had filed its motion to strike the public adjuster's third-party action, the law firm also served the public adjuster with a section 57.105 "safe harbor" letter and proposed section 57.105 sanctions motion. The law firm's "safe harbor" letter properly stated that the law firm would file its section 57.105 motion if the public adjuster did not voluntarily dismiss its third-party action within twenty-one days of service.

After the twenty-one day "safe harbor" period expired, the law firm filed its section 57.105 motion with the circuit court.

After the predecessor circuit court entered its order striking the public adjuster's third-party complaint, the public adjuster filed a response to the law firm's section 57.105 motion. The public adjuster argued, in pertinent part, that its third-party action was not frivolous when filed because the public adjuster had relied upon the different circuit court's discovery order—entered in a separate action between the public adjuster and the law firm—which had provided: "[The law firm] engaged in *a tri-partite relationship* with [the insureds as] mutual clients of [the law firm] and [the public adjuster], which was accompanied or preceded by [the public adjuster's agreement] with the [insureds]." (emphases added).

A successor judge held a hearing on the law firm's section 57.105 motion. At the hearing, the law firm replied that the other circuit court case upon which the public adjuster was relying concerned "a discovery issue between the parties over client confidential records that have nothing to do with this case." The law firm added:

> [E]ven if we get into the … concept of [a] tripartite relationship[,] … [t]he argument regarding the tripartite

6

relationship has no bearing because there is no relationship whereby a claim for contribution, indemnification, and/or subrogation, can be made in this case, and the [predecessor] court made that ... clear in the [motion to strike] hearing, ... that there is no way ... to ever show a claim for indemnification in this matter ....

After the hearing, the circuit court entered an order denying the law firm's section 57.105 motion, summarily finding that the public adjuster had "offered sufficient evidence and legal authority to show that [its] claim was not so lacking in merit as to entitle the [law firm] to attorney's fees and costs pursuant to Florida Statute Section 57.105."

The law firm timely filed this appeal.

### F. *The Parties' Arguments on Appeal*

The law firm's briefs summarize its argument on appeal as follows:

> To begin, the [predecessor circuit] court [wa]s correct that once [the public adjuster] dismissed the indemnification claim, this rendered the remaining ... two claims moot. It should have then become evident to [the public adjuster] that [its] remaining two claims were no longer justiciable. [The public adjuster] should have immediately dismissed them. [It] did not. Thus, on this ground alone, sanctions are warranted under ... § 57.105.
>
> Even if this were not the case, nothing in the record supports a conclusion that [the public adjuster] is a third-party beneficiary to the [legal services agreement]. ...
>
> ...
>
> The claim for [p]rofessional [m]alpractice hinges on [the public adjuster] being a third-party beneficiary. ... However, ... [the public adjuster] is not a third-party beneficiary to the [legal services agreement]. ... Therefore, pursuant to ... § 57.105, an award of attorney's fees is required.

The public adjuster's answer brief summarizes its response as follows:

> The [t]hird-[p]arty [action's] ... claims against [the law firm] ... were not frivolous or untenable, and constituted a

7

good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success.

... The [predecessor circuit] [c]ourt in this action and [the other circuit court in the discovery-related action] ... have found ... that there is enough of a longstanding history and relationship between the [p]arties as to where [the public adjuster] could genuinely believe that there was a third-party beneficiary relationship [between] [the public adjuster], [the law firm], and their mutual clients.

### *Our Review*

"The standard of review of a [circuit] court's decision on entitlement to section 57.105(1) attorney's fees is generally abuse of discretion. However, to the extent a [circuit] court's order on fees is based on an issue of law, this court applies de novo review." *Minto PBLH, LLC v. 1000 Friends of Fla., Inc.,* 228 So. 3d 147, 149 (Fla. 4th DCA 2017) (citation and internal quotation marks omitted).

Section 57.105(1), Florida Statutes (2020), provides in pertinent part:

(1) Upon ... motion of any party, the court shall award a reasonable attorney's fee ... to be paid to the prevailing party ... at any time ... in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:

(a) Was not supported by the material facts necessary to establish the claim or defense; or

(b) Would not be supported by the application of then-existing law to those material facts.

....

(3) Notwithstanding subsections (1) and (2), monetary sanctions may not be awarded:

(a) Under paragraph (1)(b) if the court determines that the claim or defense was initially presented to the court as a

8

good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success.

§ 57.105(1)(a)-(b), (3)(a), Fla. Stat. (2020).

"A finding under section 57.105(1)(a) or (1)(b) is tantamount to a conclusion that the claim was frivolous when filed, or later became frivolous." *In re A.T.H.*, 180 So. 3d 1212, 1215 (Fla. 1st DCA 2015) (citation and internal quotation marks omitted). As we explained in *Minto*:

> Where there is an arguable basis in law and fact for a party's claim, a [circuit] court may not sanction that party under section 57.105. Courts must apply section 57.105 "with restraint to ensure that it serves its intended purpose of discouraging baseless claims without casting a chilling effect on use of the courts."

228 So. 3d at 149 (internal citations omitted).

Furthermore, a plaintiff's ultimate voluntary dismissal of a claim does not automatically entitle the defendant to section 57.105 fees. *Cf. Connelly v. Old Bridge Vill. Co-Op, Inc.*, 915 So. 2d 652, 656 (Fla. 2d DCA 2005) ("The plaintiffs' ultimate voluntary dismissal of [two defendants] did not constitute adequate justification for [awarding] section 57.105 fees [to those defendants]."). "Failing to state a cause of action is not, in and of itself, a sufficient basis to support a finding that a claim was so lacking in merit as to justify an award of fees pursuant to section 57.105." *Id.* (citation omitted).

Here, we conclude the public adjuster's third-party action against the law firm, when initially filed—or, at the very latest, from when the public adjuster purportedly first saw the legal services agreement—was not supported by the material facts necessary to establish the third-party action's claims or the application of then-existing law, and did not present a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law. Thus, the successor circuit court erred in denying the law firm's section 57.105 sanctions motion.

We will address each count in turn.

## A. *Count 1 for Breach of Intended Beneficiary Contract*

As the law firm's motions to strike and for section 57.105 sanctions argued, the public adjuster was not an intended beneficiary of the legal services agreement between the law firm and the insureds:

> The mutual intent of the [legal services agreement] is for [the law firm] to provide legal services to the Insured[s] ....  It specifically states that [the law firm] has no obligation to pay [the public adjuster] or even an intention to pay [the public adjuster].  Thus, the intent of both ... parties to the [legal services agreement] is to primarily and directly benefit the Insured[s], not [the public adjuster].  A third party is only considered a beneficiary to the contract if both ... contracting parties intend to primarily and directly benefit the third party.  *Cigna Fire Underwriters Ins. Co. v. Leonard*, 645 So. 2d 28[, 29] (Fla. 4th DCA 1994).

> ....

> Here, ... [a]t most, the [legal services agreement] only establishes the Insured[s'] responsibility to retain 80% of the settlement and to pay a 20% commission to [the public adjuster].  This is insufficient to assert [an intended] beneficiary breach of contract claim.

> "It is not enough that the ... services ultimately rendered accrue to the [third party]."  *City of Tampa v. Thornton-Tomasetti, P.C.*, 646 So. 2d 279, 282-83 (Fla. 2d DCA 1994) (citation omitted).  ...  A third party who benefits only incidentally or indirectly by the existence of a contract has no right to enforce that contract.  *Bryant v. Cole*, 282 So. 2d 652[, 654] (Fla. 2d DCA 1973).

> ....

> [E]ven if the [breach of insurance contract] lawsuit would have been successful, the primary and direct beneficiary would only be the Insured[s], who would retain 80% of the lawsuit settlement.  The Insured[s] would then be responsible to pay [the public adjuster], according to the [public adjuster's agreement] [w]ith the Insured[s] – which is nothing other than a contract for a 20% commission.

10

As for the purported "tripartite relationship" to which a different circuit court referred in the separate discovery-related action, we see no evidence in the record to indicate that any such "tripartite relationship" existed, whether in the separate discovery-related action or the public adjuster's third-party action. The public adjuster and its counsel should have known that this other circuit court's mere reference to an undefined "tripartite relationship," was, standing alone, insufficient as a matter of law for the public adjuster to have constituted the material facts necessary to establish the third-party action's claims or the application of then-existing law.

At the very latest, the public adjuster, upon voluntarily dismissing its Count 3 for common law indemnification, should have withdrawn its Count 1 for breach of intended beneficiary contract and Count 2 for professional malpractice as well. *See Matey v. Reinman*, 599 So. 2d 201, 202 (Fla. 2d DCA 1992) ("[A] third[-]party claimant must allege a claim for indemnification, subrogation or contribution before asserting any other claim against a third[-]party defendant."); *Delray Assocs. Ltd. v. Sabal Pine Condos., Inc.*, 402 So. 2d 1314, 1315-16 (Fla. 4th DCA 1981) ("Third[-]party liability is founded upon a right to contribution, subrogation, or indemnification.").

### B. *Count 2 for Professional Malpractice*

The public adjuster's Count 2 for professional malpractice—which hinged upon its Count 1 for breach of intended beneficiary contract— similarly was not supported by the material facts necessary to establish that claim or the application of then-existing law. As the law firm's motions to strike and for section 57.105 sanctions argued, legal malpractice claims "are restricted to clients in strict privity with the attorney, except in one 'narrow' exception" which does not apply here— where the third party is an "[i]ntended third-party beneficiar[y] of the engagement agreement …. *Angel, Cohen & Rogovin v. Oberon Inv., N.V.*, 512 So. 2d 192[, 194] (Fla. 1987)."

Here, the public adjuster was at most an incidental beneficiary, and not an intended beneficiary, of the legal services agreement between the law firm and the insureds. As with Count 1 for breach of intended beneficiary contract, the public adjuster, at the very latest, should have voluntarily dismissed its Count 2 for professional malpractice upon dismissing its Count 3 for common law indemnification. *See Matey*, 599 So. 2d at 202 ("[A] third[-]party claimant must allege a claim for indemnification, subrogation or contribution before asserting any other claim against a third[-]party defendant."); *Delray Assocs.*, 402 So. 2d at

1315-16 ("Third[-]party liability is founded upon a right to contribution, subrogation, or indemnification.").

### C. *Count 3 for Common Law Indemnification*

The public adjuster's Count 3 for common law indemnification—which the public adjuster ultimately voluntarily dismissed after the "safe harbor" period had expired—also was not supported by the material facts necessary to establish that claim or the application of then-existing law. As the law firm's motions to strike and for section 57.105 sanctions argued:

> To state a claim for common law indemnity, a party must allege that [it] is without fault, that another party is at fault, and that a special relationship between the two parties makes the party seeking indemnification vicariously, constructively, derivatively, or technically liable for the acts or omissions of the other party. *Tsafatinos v. Family Dollar Stores of Fla., Inc.*, 116 So. 3d 576, 581 (Fla. 2d DCA 2013)[.]
>
> ....
>
> The [third-party action] contains no facts indicating that [the public adjuster] could be held vicariously, constructively, or technically liable for [the law firm's] alleged negligence. In fact, [the public adjuster] alleged that [it] satisfied its duty to the Insured[s] "by handing the file over to [the law firm]." ...
>
> [The public adjuster] was not retained to provide attorney services, nor could [it] ... as [it] [is] not licensed to practice law. [The public adjuster] could never be responsible for any law firm's actions. ...

(paragraph numbering deleted).

Furthermore, the legal services agreement between the law firm and the insureds was irrelevant to the public adjuster's common law indemnification claim, which was not based upon any contract.

### *Conclusion*

Based on the foregoing, the public adjuster's third-party action against the law firm, when initially filed—or, at the very latest, from

12

when the public adjuster purportedly first saw the legal services agreement—was not supported by the material facts necessary to establish the third-party action's claims or the application of then-existing law, and did not present a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law. Thus, the successor circuit court erred in denying the law firm's section 57.105 sanctions motion. We reverse that order, and remand for the circuit court to (1) grant the law firm's section 57.105 sanctions motion, and (2) set an evidentiary hearing to determine the sanctions amount to be paid by the public adjuster and its counsel to the law firm.

*Reversed and remanded with instructions.*

LEVINE and ARTAU, JJ., concur.

*　　*　　*

**Not final until disposition of timely filed motion for rehearing.**